# Commonwealth v. Puder, Appellant.

*Constitutional law—Constitution of Pennsylvania—Special legislation—Reasonable classification—Small loans—Act of June 17, 1915, P. L. 1012—Statutes—Construction—Titles — Sufficiency — Legislative power delegation—Discretion—Presumption.*

1. Every presumption is in favor of the validity of the exercise of legislative power, and an act must be upheld unless its provisions plainly violate a constitutional mandate.

2. A classification to be valid must be based upon a necessity springing from manifest peculiarities, clearly distinguishing those members of one class from each of the other classes and imperatively demanding legislation for each class, separately, that would be useless and detrimental to the others.

3. The legislature is the sole judge of the wisdom and expediency of a statute, as well as of' the necessity for its enactment, and whether the legislation be wise, expedient or necessary is without importance to the court in determining its constitutionality.

4. The Act of June 17, 1915, P. L. 1012, regulating the business of loaning money in sums of $300 or less to persons pressed by lack of funds to meet immediate necessities, and prescribing penalties for its violation, is not open to the objection that it is special legislation in violation of Article III, Section 7, of the Constitution of Pennsylvania as there appears to be both a necessity and a valid basis for the classification of the business of loaning money in small amounts to persons in the situation contemplated by the statute.

Commonwealth v. Young, 248 Pa. 458, distinguished.

5. All the Constitution requires is that the title of an act shall fairly give notice of its subject-matter to reasonably direct the inquirer to the contents.

6. The title of the said act which reads "An act regulating the business of loaning money in sums of $300 or less......; fixing the rates of interest and charges therefor; requiring the licensing of lenders; and prescribing penalties for the violation of this act" gives sufficient notice of the provisions of the Act of 1915, providing for the criminal punishment of one who loans money without procuring a license, to satisfy the constitutional requirements.

7. The fact that the commissioner of banking is given, by the Act of 1915, a discretion to grant licenses to applicants, if satisfied that the character and general fitness of the applicant is such as to warrant the conclusion that the business will be honestly conducted,

130    COMMONWEALTH *v.* PUDER, Appellant.

is not a grant of legislative discretion, as the legislature has fully described in the statute the conditions under which the commissioner is to act.

Argued Jan. 21, 1918.    Appeal, No. 248, Jan. T., 1917, by defendant, from judgment of Superior Court, Oct. T., 1916, No. 328, affirming judgment of Q. S. Philadelphia County, Jan. Sess., 1916, No. 560, on verdict of guilty in case of Commonwealth of Pennsylvania v. H. Matthias Puder.    Before POTTER, STEWART, MOSCHZISKER and FRAZER, JJ.    Affirmed.

Appeal from Superior Court.    Opinion by WILLIAMS, J., 67 Pa. Superior Ct. 11.

The facts appear in the opinion of the Supreme Court.

The defendant was found guilty of violation of the Act of June 17, 1915, P. L. 1012, regulating the business of loaning money in sums of $300 or less, and sentenced to pay a fine of $100 and the costs of prosecution.    The Superior Court affirmed the sentence of the Court of Quarter Sessions.    Defendant appealed.

*Error assigned* was the judgment of the Superior Court.

*Owen J. Roberts,* with him *Charles H. Weston,* for appellant.—The constitutionality of the Small Loans Act of 1915 is ruled by the case of Commonwealth v. Young, 248 Pa. 458.

Even if Commonwealth v. Young is not controlling, the Small Loans Act is special legislation since its classification does not satisfy the constitutional requirement that it should be based upon the necessities of different classes with manifestly peculiar needs : Wheeler v. Philadelphia, 77 Pa. 338; Scowden's App., 96 Pa. 422; Ayars' App., 122 Pa. 266; Chalmers v. Philadelphia, 250 Pa. 251; Commonwealth v. Casey, 231 Pa. 170; Commonwealth v. Clark, 14 Pa. Superior Ct. 435 ; Sayre Borough v. Phillips, 148 Pa. 482; Commonwealth v. Zacharias,

181 Pa. 126; Mansfield's Case, 22 Pa. Superior Ct. 224; Commonwealth v. Grossman, 248 Pa. 11.

The act is an unconstitutional delegation of legislative power because of the unregulated discretion given the Banking Commissioner in selecting licensees: O'Neil v. American Fire Insurance Co., 166 Pa. 72; Schæzlein v. Cabaniss, 135 Cal. 466; Noel v. The People of the State of Ill., 187 Ill. 587; Fite v. State, 114 Tenn. 646.

*Joseph H. Taulane,* Assistant District Attorney, with him *Samuel P. Rotan,* District Attorney, for appellee.— The legislature was justified in placing money lenders who loan sums of $300 or less in a class by themselves: State v. Sherman, 18 Wyo. 169; The People of State of N. Y. v. Blomberg, 151 N. Y. Appellate Division 942; People of State of N. Y. v. Tolman, 159 N. Y. Appellate Division 905; Engel v. O'Malley, 219 U. S. 128; Dewey v. Richardson, 206 Mass. 430; Mutual Loan Society v. Martell, 200 Mass. 482; State v. Ware, 79 Oregon 367; Wessell v. Timberlake, 116 N. E. Repr. 43; State v. Wickenhoefer, 6 Pennewill's 120 (Dela.); Edwards v. State of Florida, 62 Florida 40; King v. The State, 136 Georgia 709; Griffith v. Connecticut, 218 U. S. 563; Re Stephan, 170 California 48; Muller v. State of Oregon, 208 U. S. 412; Rast v. Van Deman, 240 U. S. 342, 357; Mutual Loan Co. v. Martell, 222 U. S. 225; Hall v. Geiger-Jones Co., 242 U. S. 539; Rosenthal v. People of N. Y., 226 U. S. 260; Miller v. Strahl, 239 U. S. 426; Booth v. Indiana, 237 U. S. 391; Quong Wing v. Kirkendall, 223 U. S. 59; McLean v. Arkansas, 211 U. S. 539; Rast v. Van Deman, 240 U. S. 342; Wilson v. Edwards, 32 Superior Ct. 295; Commonwealth v. Mecca Coöperative Co., 60 Pa. Superior Ct. 314; Gilbert's Est., 227 Pa. 648; Commonwealth v. Pflaum, 236 Pa. 294.

The title of the act is sufficient: Russ v. Co., 210 Pa. 544; Sugar Notch Borough, 192 Pa. 349; Com. v. Gilligan, 195 Pa. 504; Com. v. McKenty, 52 Pa. Superior Ct. 332; Bridgewater Boro. v. Bridge Co., 210 Pa. 105, 108;

Com. v. Greene, 58 Pa. 226, 234; Van Dyke v. Geary et al., 244 U. S. 39.

The act is not invalid because a discretion is vested in the banking commissioner in issuing licenses: Moers v. Reading, 21 Pa. 188; Com. v. Emerson, 29 York Legal Record 53; Buffalo Branch Mutual Film Corporation v. Breitinger, 250 Pa. 225; The Franklin Film Mfg. Co., 253 Pa. 422; Com. v. Lambrecht, 3 Pa. County Court Reps. 323; Com. v. Falk, 59 Pa. Superior Ct. 217; Com. v. Sweeney, 61 Pa. Superior Ct. 367; Wright v. May, 127 Minn. 150; Engel v. O'Malley, 219 U. S. 128.

OPINION BY MR. JUSTICE FRAZER, April 22, 1918:

Defendant appeals from the judgment of the Superior Court affirming the Court of Quarter Sessions of Philadelphia County entered on a verdict of guilty on an indictment charging defendant with a misdemeanor in violating the Act of June 17, 1915, P. L. 1012, "Regulating the business of loaning money in sums of three hundred ($300) dollars or less" and prescribing penalties for its violation. The principal contention is that the statute is unconstitutional as special legislation, though appellant also questions the sufficiency of the title and whether the act is an improper delegation of legislative power to the banking commissioner.

In view of the decision of this court in Commonwealth v. Young, 248 Pa. 458, relied upon by defendant, in which we held an act, in many respects similar to the one under discussion, approved June 5, 1913, P. L. 429, to be unconstitutional as class legislation, a comparison of the provisions of that act with the present one is important for the purpose of ascertaining whether there is in fact such distinction between the two as to warrant a different conclusion in the present case—bearing in mind the rule that every presumption is in favor of the validity of the exercise of legislative power, and that the act must be upheld unless its provisions plainly violate a constitutional mandate: Sharpless et al. v. Mayor, Etc., 21 Pa.

147, 164; Commonwealth v. Butler, 99 Pa. 535, 540; Commonwealth v. Grossman, 248 Pa. 11, 14.

The Act of 1913 referred to provided for the licensing of money lenders under the supervision of the Court of Quarter Sessions, the relevant provisions for the purpose of this discussion being found in section two, which reads as follows: "Any person, copartnership, association, or corporation who shall obtain a license, in accordance with the provisions of section one of this act, shall be entitled to loan money at his, their, or its place of business, for which said license is issued, and to charge the borrowers thereof, for its use or loan, interest not to exceed the rate of six per centum per annum, and a brokerage fee of not more than one-tenth of the amount actually loaned. No charge, in addition to the said interest and brokerage fee shall be exacted, charged, or collected, excepting an examination fee of not more than one dollar on all loans not exceeding fifty dollars in amount."

The Act of 1915, on the other hand, substitutes the discretion of the banking commissioner for the discretion of the Court of Quarter Sessions, and, after regulating the procedure on application for a license and specifying the necessary qualifications of the applicant, provides further in section two that: "Any person, persons, copartnership, association, or corporation who shall obtain a license, in accordance with the provisions of section one of this act, shall be entitled to loan money in sums of three hundred ($300) dollars or less, either with or without security, to individuals pressed for lack of funds to meet immediate necessities, at his, their, or its place of business, for which said license is issued, and to charge the borrowers thereof, for its use or loan, interest as follows: Upon loans not exceeding one hundred ($100) dollars in amount, not more than three (3) per centum per month; upon loans exceeding one hundred ($100) dollars in amount, and not exceeding three hundred ($300) dollars, not more than two (2) per centum per month; and, in addition, in any case in which the loan is made for a

period of not less than four (4) months, on sums not exceeding fifty ($50) dollars in amount, an examination fee of not more than one ($1) dollar; on sums exceeding fifty ($50) dollars, an examination fee of not more than two ($2) dollars, may be charged, for examining the security offered or the credit and responsibility of the borrower. No charge of any kind, in addition to interest, shall be made on a loan of less than fifteen ($15) dollars. No charge, in addition to the said interest and examination fee, shall be exacted, charged, or collected."

The distinction between the classifications under the two acts, if any, must rest upon the construction of the provisions above quoted. In the Act of 1913 there is no limit to the amount of the loans, nor is there a clearly defined class of borrowers. Under that act a person procuring a license was privileged to charge interest at the rate of six per cent. and a brokerage and examination fee not in excess of that provided for in the act, regardless of circumstances or amount of the loan. The statute being general in its scope and no reason appearing on its face for classifying persons complying with its provisions, this court concluded it violated Article III, Section 7, of the Constitution of Pennsylvania, forbidding the passage of any local or special law fixing the rate of interest. That this was the basis of the decision in Commonwealth v. Young, supra, appears from the following language in the opinion (page 461) : "The general scheme of the act is, to create into a class persons absolutely undistinguishable from the entire body of citizenship by anything suggesting a differentiation with respect to rights, privileges, immunities, or peculiarities, whether arising out of personal or business relations, and then to invest such class with a privilege denied to all not within the class, namely, the right to collect on money loaned a rate of interest in excess of that to which all others are confined. So much is beyond all question." On the other hand, the Act of 1915 confines the class of loans to those not exceeding three hundred dollars and

defines the class of borrowers as "individuals pressed by lack of funds to meet immediate necessities." It thus appears all persons are eliminated from taking the benefit of the act except those who desire to make loans not exceeding three hundred dollars in amount. Commonwealth v. Young did not decide the legislature might not pass a law regulating the business of loaning money in small sums. On the contrary, the opinion recognizes this right if a proper basis of classification can be found as appears from the following language (page 461-3) : "Whether such persons stand in need of further facilities of this character, or whether it is practicable by legislative action to afford the relief needed, are questions wholly aside. This one fact stands out with a distinctiveness that makes it unmistakable and indisputable— the necessary and only effect of this act must be, not to benefit such as are necessitous, but to advantage a class of persons who, however they may have qualified by showing that none in the class have been convicted of certain crimes and misdemeanors, are yet willing to pay for the privilege of exacting from those made dependent by their necessities, a rate of interest more than six times the rate borrowers with larger means can be compelled to pay....... In what we have said our purpose has been simply to show that the one certain effect of the act is to create a distinct class out of persons having in common, as between themselves, no peculiarities whether of person or business, or anything else, distinguishing them from any other class, and investing the class thus artificially created with special and exclusive privilege with respect to interest charges on money loaned. From our study of the act we see no escape from the conclusions above expressed."

It remains only to consider whether or not the basis of classification adopted in the Act of 1915 is a proper one. In Ayars' App., 122 Pa. 266, it was held classification to be valid must be based upon (page 281) "a necessity springing from manifest peculiarities, clearly distin-

guishing those [members] of one class from each of the other classes, and imperatively demanding legislation for each class, separately, that would be useless and detrimental to the others." Classification is a legislative question subject to judicial revision only so far as to see it is founded on real and not merely artificial distinctions, and, if the distinctions are genuine, the court cannot declare the classification void, though they may not consider the basis to be sound. The test is not wisdom, but good faith, in the classification: Seabolt v. Commissioners, 187 Pa. 318; Commonwealth v. Grossman, 248 Pa. 11. In construing a statute the presumption is that it is a valid exercise of legislative power and the burden is upon one who attacks its validity to show a clear violation of the constitutional provision. "The legislature is the sole judge of the wisdom and expediency of a statute, as well as of the necessity for its enactment, and whether the legislation be wise, expedient or necessary is without importance to the court in determining its constitutionality. In other words, the assembly has a free hand to legislate on every subject in such manner as it deems proper unless there is a constitutional prohibition clearly expressed or necessarily implied": Commonwealth v. Grossman, supra. Applying the foregoing principles to the present case the fundamental question is whether a necessity exists demanding legislation for the class of money lenders in sums of three hundred dollars or less to those of limited means who would otherwise be unable to procure needed funds, and whether classification adopted to meet such necessity is based on a real and not merely an artificial distinction. The subject-matter of the act has been before the public and under investigation and discussion for a number of years, not only in this jurisdiction but in other states as well, and has resulted in the adopting of somewhat similar legislation in probably half the states of the union. The attempt in recent years to eradicate the evils of the so-called "money loan sharks" by proceedings instituted in

Philadelphia and Pittsburgh is a matter of general public knowledge and those who have given the matter close investigation and thought concede that a prohibition of the business does not accomplish the desired result, and that the only practical method of dealing with the subject is by proper regulation. Our legislature, in a preamble to the Act of 1915, omitted from the pamphlet laws but shown in the certified copy of the act from the office of the secretary of the Commonwealth, recognizes the situation and the impracticability of prohibiting the business of loaning money in small amounts and the need of regulation and supervision by law, and also the fact that such loans are necessarily attended with greater risk than is ordinarily incident to lending money by banks, pawn brokers and others who loan only on approved collateral. The fact that loans of this nature rarely exceed the sum of three hundred dollars is admitted, and the adoption of the amount named as a limitation affords a proper criterion for a classification in so far as the peculiar nature and character of the business is concerned. The matter of fixing the maximum amount to be charged for the use of money rests primarily in the discretion of the legislature and is within the police power of the State: Griffith v. Connecticut, 218 U. S. 563. Statutes passed at various times by our State legislature recognize certain businesses to be in a separate class and authorize as to them a departure from the regular rate of interest fixed by the general law. For example, building and loan associations are permitted to charge a premium on loans in excess of the legal rate. There exists in the present case both a necessity and a valid basis for classification of the business of loaning money in small amounts, with or without security, and the distinction between the present law and the Act of 1913, which was declared unconstitutional in Commonwealth v. Young, supra, furnishes adequate support for the conclusion of the court below that

the present act cannot be condemned on the ground of improper classification.

Appellant also contends the title of the act is insufficient to give notice of the provision for criminal punishment of one who loans money without procuring a license. The title is "An act regulating the business of loaning money in sums of three hundred ($300) dollars or less......; fixing the rates of interest and charges therefor; requiring the licensing of lenders; and prescribing penalties for the violation of this act." All the Constitution requires is that the title of an act shall fairly give notice of its subject-matter, to reasonably direct the inquirer to the contents: Allegheny County Home's Case, 77 Pa. 77; Bridgewater Boro. v. Big Beaver Bridge Co., 210 Pa. 105. Certainly the use of the word "penalties" should put the inquirer upon notice that a violation of the statute's provisions would be followed by either civil or criminal punishment, or both.

Neither is there merit in the argument that the act is an improper delegation of legislative discretion to the banking commissioner by whom the licenses are to be issued. As was stated by the Superior Court the appeal is not from an act of the banking commissioner, or from his refusal to act, as it is conceded defendant did not apply for a license or otherwise attempt to bring himself within the provisions of the statute. The mere fact of the commissioner being given power to grant a license to applicants, in his discretion, if satisfied the character and general fitness of the applicant is such as to warrant the conclusion that the business will be honestly conducted, is not a grant of legislative discretion, as the legislature has fully described the conditions under which he is to act. There are various statutes on our books in which discretion is given to a public official or board to determine the qualifications of applicants for license to carry on a particular kind of business, among which we may refer to the Act of March 19, 1909, P. L. 46, relating to the qualification of osteopathic physicians, the Acts of

June 19, 1911, P. L. 1067, and May 15, 1915, P. L. 534, creating a state board of censors of moving pictures, the latter were upheld in Buffalo Branch Mutual Film Corporation v. Breitinger, 250 Pa. 225, and Franklin Film Manufacturing Co., 253 Pa. 422, and the Act of July 22, 1913, P. L. 928, creating a Livestock Sanitary Board, upheld in Commonwealth v. Falk, 59 Pa. Superior Ct. 217. In Engel v. O'Malley, 219 U. S. 128, the New York Private Bankers' Act vesting the granting of licenses in the state controller was sustained.

The case of O'Neil et al. v. American Fire Insurance Co., 166 Pa. 72, relied upon by defendant, is not controlling here; in that case, as we pointed out in Jermyn v. Scranton, 186 Pa. 595, 602, there was an attempt to delegate to a single individual the power to prescribe a compulsory form of contract between private parties, leaving to the official the full power to prescribe the form and enforce its use.

The judgment is affirmed.